# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY LYNN GALLARDO, | ) | 1:07cv01675 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Tracy Lynn Gallardo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On January 2, 2008, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed her applications on October 5, 2005, alleging disability September 30, 2004, due to lower back pain, arthritis and hypertension. AR 61-64, 71-79, 348-351. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 38, 40-44, 48-52, 352. On September 20, 2006, ALJ Robert Evans held a hearing. AR 358-378. He denied benefits on September 29, 2006. AR 15-24. On August 31, 2007, the Appeals Council denied review. AR 9-13.

Hearing Testimony

ALJ Evans held a hearing on September 20, 2006, in Palmdale, California. Plaintiff appeared with her representative, Diana Wade. Vocational expert ("VE") Sandra Schneider also appeared and testified.

When questioned by her attorney, Plaintiff explained that she has a lot of problems with her back and hip. She has a hard time getting up in the mornings and always has her kids pull her out of bed. She takes her medication as soon as she gets up in the morning, and it takes some of the pain away and "gets [her] up to where [she] can. . . at least get up." AR 369. Once she takes her medication, she's okay but still has a hard time. She can't lift too many things, like pots or pans, because she gets a sharp pain that shoots through her hands and into her arms. She can't bend down very well because she cannot get back up. Plaintiff usually has her cousins, or somebody else, help her with housework and lifting things. Her medications make her very drowsy all the time and she has a hard time thinking. AR 368-369.

Plaintiff thought that she could stand for four or five minutes before needing to sit down. With her back brace, she could sit for five minutes before needing to change positions. AR 370. She wears her back brace all the time and it helps "pull" her back together so that she can walk well. AR 371. She could walk about half a block, sometimes less, before her legs start cramping. AR 371. She cannot bend over at all and can squat only if someone helped her up. AR 372. Plaintiff thought that she could lift two to three pounds. AR 372.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    Plaintiff told the ALJ that she had back surgery in July 2003 and went back to work in
2    August 2004.  She could not perform the job, however, because she had to take a lot of breaks
3    from sitting and couldn't lift things.  Since she resigned, her condition has gotten worse because
4    she cannot do too much.  She lays down a lot, but has to keep moving.  AR 374.  She did not
5    think she could perform any job and explained that when she touches the keys on the keyboard,
6    pain shoots up her arms.  AR 374.
7    For the first hypothetical question, the ALJ asked the VE to assume an individual of
8    Plaintiff's age, education and work background, who could lift 10 pounds frequently and 20
9    pounds occasionally, stand and/or walk for six hours and sit for six hours.  This person could
10   occasionally climb, balance, crouch and crawl.  This person could perform all of Plaintiff's past
11   relevant work, which included data entry operator, auditor, hotel clerk and secretary.  AR 375-
12   376.
13   <u>Medical Record</u>
14   Plaintiff had an MRI on February 5, 2003, which revealed an active degenerative disc
15   change at L4-5 with narrowing and a minimal disc bulge.  AR 178.
16   A CT scan taken on July 8, 2003, was consistent with a 5 mm central and right herniated
17   disc at L4-5.  AR 179.  X-rays taken the same day revealed L4-5 disc space narrowing.  AR 180.
18   On July 16, 2003, James J. Lynch examined Plaintiff for complaints of low back pain,
19   radicular pain, lower extremity weakness and right lower extremity paresthesia.  He diagnosed
20   clinical evidence of bilateral L5 radiculopathy with some component of right L4-5 involvement
21   and L4-5 degenerative disc disease with a large floppy disk and blackened disk disease.  Dr.
22   Lynch recommended surgery, which she underwent on July 23, 2003.  AR 130-132, 172-177.
23   On August 6, 2003, Plaintiff had excellent strength throughout.  AR 171.
24   Plaintiff saw Dr. Lynch on September 9, 2003.  He indicated that she had made an
25   "excellent recovery" and that her radicular leg pain had resolved entirely.  Her strength was
26   normal at 5/5 throughout.  Straight leg raising was negative.  Plaintiff reported that she was very
27   satisfied with her early recovery and Dr. Lynch expected her to make a complete recovery.
28   Plaintiff was prescribed physical therapy, twice a week for six weeks.  AR 129, 170.

On September 29, 2003, Dr. Lynch indicated that Plaintiff could return to work on October 13, 2003, with lifting temporarily restricted to 10 pounds. AR 128.

Plaintiff began treating with Taema Weiss, M.D., on December 26, 2003, for prenatal care. AR 305. Plaintiff was working four hours a day, but indicated that it was getting difficult to continue working because of pain, pressure and spotting. AR 305.

On February 9, 2004, Plaintiff underwent a cesarean section and was instructed to take iron supplements and prenatal vitamins. AR 160-166.

Plaintiff saw Nurse Practitioner Jeanne Walter on April 2, 2004, and requested a release for work. Nurse Walter did not release Plaintiff to work because of her blood pressure and headaches. AR 291.

On April 9, 2004, Plaintiff saw Dr. Weiss. She reported that she would like to go back to work and was not having any headaches or neurological symptoms. Dr. Weiss refilled Plaintiff's Robaxin (methocarbamal) and Vicodin. AR 289.

On July 2, 2004, Plaintiff saw Nurse Walter and complained of recent back trauma after she slipped out of her car and fell onto her back. On examination, she moved to the examination table without too much difficulty, but heel-toe walking caused some exacerbation of discomfort. Her lower extremity pulses and reflexes were symmetrical. Nurse Walter refilled Plaintiff's Vicodin and methocarbamol and discussed with Plaintiff the need to do her back strengthening exercises. AR 287.

On October 7, 2004, Plaintiff discussed birth control options with Anne Gasior, M.D. Plaintiff requested a bilateral tubal ligation, but until testing could be completed she was given hormonal birth control. Plaintiff also complained of back pain with menstruation with radiation to her left leg. Plaintiff was taking Vicodin and Robaxin, but indicated that the Robaxin was not working. On examination, Plaintiff had tenderness in her back and pain when she rotated at the waist and bent forward. Straight leg raising was negative and although she had some discomfort with resistance on her legs, she appeared to have full power. Her deep tendon reflexes were difficult to elicit. There was no atrophy. Dr. Gasior opined that Plaintiff's back pain was more musculoskeletal in nature and recommended x-rays and physical therapy. She also prescribed

4

Tylenol with codeine.  Plaintiff also asked Dr. Gasior for a refill of Robaxin even though she stated it did not work.  Dr. Gasior did not fill the Robaxin prescription.  AR 285.

Plaintiff saw Dr. Weiss on February 4, 2005, and complained of aching in her arms and hands for the past month.  Her hands felt swollen and she was having difficulty driving.  On examination, Plaintiff's fingers did not appear swollen but were tender bilaterally.  She also had some tenderness at her elbows and shoulders, but had full range of motion.  Her x-rays were negative for any arthropathy.  Dr. Weiss diagnosed bilateral upper extremity pain, which could be an inflammatory arthritide.  She ordered blood work and continued Plaintiff's Vicodin and methocarbamol.  Plaintiff also requested hormonal birth control because of painful periods.  AR 270.

On April 15, 2005, Plaintiff spoke with Dr. Weiss about birth control and indicated that she has tried many hormonal birth control methods but they gave her migraines.  She requested bilateral tubal ligation.  AR 268.

Plaintiff went to the emergency room on May 15, 2005, explaining that she has had problems with her back since the surgery, but that she recently stumbled while doing laundry.  She complained of worsening low back pain and total body aches.  On examination, she had generalized decreased range of motion, but also had full range of motion in her upper and lower extremities.  She was given medication and discharged "pain free."  AR 154-155.

Plaintiff returned to Dr. Weiss on May 16, 2005, complaining of a recent exacerbation of back pain.  She also complained of nerve pain down both legs, as well as aching hands that felt swollen.  Plaintiff was tearful and sitting on a pillow.  She had difficulty transferring from the chair to the table.  Deep tendon reflexes were +2 in the bilateral patella and zero in her bilateral Achilles.  Plaintiff reported some "dullness" between her toes with sensory testing.  Straight leg testing was positive bilaterally and she had tenderness to palpation in her bilateral sacroiliac.  Plaintiff also had severe foot fungus on both feet.  Her hands appeared "very minimally swollen at the joints bilaterally."  Plaintiff had full range of motion and although she complained of tenderness in her hands, Dr. Weiss noted that this was difficult to assess.  Dr. Weiss diagnosed

acute exacerbation of chronic low back pain and diffuse arthralgias, notably in the bilateral hands. She was unsure if Plaintiff had fibromyalgia and recommended further testing. AR 264.

Plaintiff attended physical therapy in May and June 2005. AR 151-153.

On June 2, 2005, Plaintiff saw Dr. Weiss and reported that physical therapy, especially the TENS unit, seemed to help. She continued to complain of numbness in her feet and pain and numbness in her thighs. Plaintiff requested Prozac to help her anxiety level. On examination, she was in no acute distress. Deep tendon reflexes were zero on the bilateral patella and Achilles. Straight leg raising was positive on the right, but Plaintiff would not even extend her left leg because of pain. The muscular examination was difficult because it was limited by pain, although she appeared to have weakness with toe extension on the left and right. Dr. Weiss diagnosed back pain with radiculopathy and instructed Plaintiff to continue with Vicodin, Robaxin and physical therapy. Dr Weiss prescribed Prozac, believing it would be a good addition to chronic pain management. Plaintiff was also interested in bilateral tubal ligation because a pregnancy would be very difficult on her "physically and mentally." AR 262.

Dr. Weiss completed a Medical Examination and Capacity Form on June 2, 2005. She diagnosed Plaintiff with lower back pain with radiculopathy and opined that her condition was severe enough to prevent all work. Her medications caused decreased alertness and she would need frequent changes in position. Dr. Weiss opined that Plaintiff could lift less than ten pounds frequently and occasionally, could stand and/or walk for less than two hours, and could sit for less than two hours. AR 144-145.

On June 13, 2005, Plaintiff saw Dr. Weiss because of worsening back pain. She was using four Vicodin a day and asked about Methadone. Plaintiff reported that physical therapy was increasing her pain. On examination, Plaintiff was in no acute distress, but looked uncomfortable at times and had difficulty sitting. Plaintiff reported that she was unable to pick up her daughter. Dr. Weiss started Plaintiff on Methadone and gave her more Vicodin. AR 258.

A lumbar MRI performed on June 30, 2005, revealed postsurgical changes (screws and a disc spacer), but no foraminal stenosis or spinal stenosis. No herniated discs were present and there was no significant facet arthritis. AR 187.

Plaintiff saw Dr. Weiss on July 13, 2005. She complained of constant back pain and some leg pain, especially on the right. She also complained of some thigh pain and wanted another surgical evaluation. On examination, Plaintiff seemed uncomfortable. She had decreased range of motion to forward flexion and tenderness to palpation on the back. The examination was limited by the amount of pain and Plaintiff had difficulty with the strength portion of the examination. Dr. Weiss diagnosed back pain with left lower extremity radicular symptoms. AR 254.

On October 7, 2005, Walter D. Johnson, M.D., examined Plaintiff at Dr. Weiss' request. Plaintiff complained of "whole body aches" and reported that she was better for about one week after surgery, when she found out that she was two and one half months pregnant. The pregnancy "caused great stress on her spine" and since that time, she has had an increase in pain. She also reported that her left leg gives out on occasion. On examination, there were no real objective findings. Plaintiff had good muscle strength, without evidence of sensory loss, and deep tendon reflexes were symmetrical throughout. Dr. Johnson reviewed the recent MRI and noted that it showed good placement of the screws and fusion, and no evidence of foraminal compromise or stenosis. He recommended a rheumatology work-up based on his belief that she had "diffuse pain issues." AR 212-213.

Plaintiff saw Dr. Weiss on October 11, 2005, and reported the findings from Dr. Johnson's examination. Plaintiff felt comfortable with Dr. Johnson's suggestions and felt that she was "managing well." She was keeping her Vicodin usage under control and limiting her activities per Dr. Johnson's recommendations. She was also working on the spiritual aspects of her life, which she felt "really helps in her chronic pain management." AR 250.

On November 10, 2005, Plaintiff returned to Dr. Gasior to have forms filled out. She also complained of back pain and myalgias "from head to toe." AR 247. Plaintiff had a normal sensory examination, and a normal, although painful, motor examination. Reflexes were +1 bilaterally. Her gait was slow but equal and straight leg raising was positive in both legs. There was no atrophy. AR 214. She diagnosed myalgias, uncertain etiologies, possible allergies, and

referred Plaintiff to rheumatology. Dr. Gasior also diagnosed chronic back pain and continued her Vicodin and Robaxin. AR 247.

State Agency physician G.W. Bugg, M.D., completed a Residual Functional Capacity Assessment form on November 16, 2005. He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently. She could stand and/or walk for six hours and could sit for six hours. Plaintiff could occasionally climb, crouch and crawl and could frequently balance, stoop and kneel. AR 215-222. These findings were affirmed on February 23, 2006. AR 222.

On November 19, 2005, Dr. Weiss told Plaintiff that her arthralgia lab work was negative except for Hepatitis C antibody, which was indeterminate. AR 246.

On January 3, 2006, Plaintiff saw Dr. Weiss and requested a refill on her Vicodin. She indicated that the cold weather had increased her pain, but the methacarbamol seemed to help.

Plaintiff returned to Dr. Weiss on March 15, 2006, and complained of worsening back pain, stiffness in her legs and cramps in her feet. She requested an epidural. On examination, Plaintiff had some decreased range of motion to forward flexion, some tenderness in her paraspinal muscles in the lumbar area and some tenderness at the bilateral sacroiliac joints. AR 235.

On March 28, 2006, Plaintiff underwent a lumbar epidural steroid injection to treat sciatica. AR 233.

Plaintiff saw Nurse Walter on July 12, 2006, and complained of a skin abscess and worsening back pain. Plaintiff ran out of Vicodin one week early and requested more. Nurse Walter asked Plaintiff about trying something different, but Plaintiff was resistant. Nurse Walter recommended that she make an appointment with Dr. Weiss to discuss the chronic pain issue and alternatives to increasing her Vicodin. AR 231.

Plaintiff saw Dr. Weiss on August 15, 2006, "mainly to have Disability paperwork filled out regarding her limitations due to her back pain." Dr. Weiss reported that Plaintiff continued to have a lot of pain in her leg and back, although a TENS unit helped and she was undergoing physical therapy. Plaintiff reported a lot of muscle spasms and overall back pain, as well as

occasional "lightening pain" shooting down her leg. Dr. Weiss continued Vicodin and methocarbamol, and indicated that she would seek approval for a TENS unit. AR 229.

In her August 15, 2006, Residual Functional Capacity assessment, Dr. Weiss diagnosed Plaintiff with low back and leg pain and indicated that she was unlikely to improve. She has constant needle-like pain, rated as a 10/10 in the morning, lessening to a 4/10 but made worse with standing, sitting or walking. She has significant limitation of motion, limited side bending, muscle spasm, abnormal gain and tenderness. Her pain medication leads to some mild relief but also causes drowsiness and dizziness. She opined that Plaintiff was not a malingerer and that her impairments were reasonably consistent with the symptoms and limitations. Her attention and concentration would constantly be severe enough to interfere with work and she was incapable of even a low-stress job. She could walk less than one block without rest or severe pain and could sit for 10 minutes at one time and stand for ten minutes at one time. She could stand and walk for less than two hours total in an eight hour day. She needed to walk every 10 minutes, for about five minutes at a time. Plaintiff would require unscheduled breaks at least every hour, for 15 minutes, and would need to occasionally lie down. She uses a back brace occasionally. Plaintiff could rarely lift less than 10 pounds, and never over 10 pounds. She could occasionally perform movements of her neck. Plaintiff could never twist, stoop or climb ladders and could rarely crouch/squat and climb stairs. Plaintiff had significant limitations with reaching, handling or fingering, and could use her hands and fingers for grasping, twisting and fine manipulations only 10 percent of the time. She would be expected to be absent more than four days per month. AR 342-347.

### ALJ's Findings

The ALJ determined that Plaintiff's low back pain was a severe impairment. Despite this, she retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally, 10 pounds frequently, and occasionally climb, crouch and crawl. Given this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a data entry operator, auditor, hotel clerk and secretary. AR 20-23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

1  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ
2  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of
3  her disability; (2) has an impairment or a combination of impairments that is considered "severe"
4  (low back pain) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does
5  not have an impairment or combination of impairments which meets or equals one of the
6  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) retains the RFC to
7  perform her past relevant work.  AR 20-23.
8        Here, Plaintiff argues that the ALJ (1) failed to properly evaluate Dr. Weiss' opinion;
9  and (2) failed to properly evaluate her pain testimony.

10  **DISCUSSION**

11  A.    Dr. Weiss' Opinion
12        Plaintiff first argues that the ALJ failed to properly evaluate Dr. Weiss' functional
13  assessments.
14        The opinions of treating doctors should be given more weight than the opinions of
15  doctors who do not treat the claimant.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
16  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not
17  contradicted by another doctor, it may be rejected only for "clear and convincing" reasons
18  supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  Even if the treating
19  doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without
20  providing "specific and legitimate reasons" supported by substantial evidence in the record.  Id.
21  (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out
22  a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
23  interpretation thereof, and making findings.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th
24  Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own
25  interpretations and explain why they, rather than the doctors', are correct.  Embrey v. Bowen, 849
26  F.2d 418, 421-22 (9th Cir.1988).

27
28      [3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

11

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn v. Astrue*, 495 F.3d 625, 632-633 (9th Cir. 2007). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

The medical record before the ALJ contained functional assessments from Dr. Weiss, Plaintiff's treating physician, and Dr. Bugg, the non-examining State Agency physician. The ALJ gave significant weight to Dr. Bugg's opinion and stated that he "cannot rely upon Dr. Weiss' extreme and unsupported assessments to find the claimant more limited." AR 23.

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir.1984). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). The ALJ also relied on laboratory test results, contrary reports from examining

physicians, and testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.  Similarly, in *Andrews*, there was an abundance of evidence to support the ALJ's rejection of the treating physician's opinion.

As in *Magallanes* and *Andrews*, the ALJ did not rely on Dr. Bugg's opinion alone to reject the opinion of Plaintiff's treating physician. He first noted the problems with Dr. Weiss' opinions. AR 22. For example, he noted that Dr. Weiss' severely limiting opinions were unsupported and contradicted by the medical evidence. Dr. Weiss opined that Plaintiff could not sit, stand or walk in any combination for more than four hours in an eight hour period, which means that Plaintiff must recline at least 12 out of 24 hours. Yet as the ALJ pointed out, there have been no signs of atrophy. AR 22. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (although claimant testified that she experienced constant pain that required her to lie in a fetal position all day and precluded her from performing virtually any type of work, the ALJ properly noted that the claimant did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual).

The ALJ also explained that Dr. Weiss' lifting limitations were not supported by either the record or Plaintiff's own testimony. Although Dr. Weiss diagnosed "low back pain and leg pain," she suggested extreme hand limitations. AR 22, 347. Plaintiff's complaints of hand/arm pain were minimal, and when Dr. Weiss specifically examined her hands, Plaintiff's fingers did not appear swollen. Although there was some tenderness, she had full range of motion in her elbows and shoulders. AR 270. Her x-rays were negative for any arthropathy. Dr. Weiss ordered arthralgia lab work, but it, too, was negative. AR 246. Plaintiff points to Dr. Weiss' one time finding that her hands appeared "very minimally swollen at the joints bilaterally," but this finding in no way supports such extreme limitations.

The ALJ also noted other inconsistencies between Dr. Weiss' findings and the evidence. For instance, in the August 15, 2006, assessment, she notes muscle spasms, muscle weakness, motor loss and sensory change, but there is little, if any, notations of such findings during her examinations. AR 22. Dr. Weiss also indicates that Plaintiff could not handle even a low stress

job, but Plaintiff reported in reconsideration paperwork that although handling stress is sometimes hard, she "pray[s] a lot and that helps." AR 107.

Indeed, as the ALJ suggests, it appears that Dr. Weiss' findings were based almost exclusively on Plaintiff's subjective complaints. He states, "[t]he only logical reason for such an inconsistency would be related to what her patient told her- a probable basis for the entire assessment." AR 22. An ALJ may reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th 1989). Of course, the Court recognizes that certain ailments cause pain without revealing themselves in traditional testing. However, Plaintiff was subject to the types of tests and examinations that would likely reveal such issues, but these tests were negative. Similarly, many of the examination findings that Plaintiff points to in support of her argument are tests that are inherently subjective in nature.

The Court makes this determination with *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007) in mind. In *Orn,* the Ninth Circuit reiterated and expounded upon its position regarding the weight that should be give to a treating source opinion. However, where the treating physician's opinion is not supported in the first instance, as here, *Orn v. Astrue* is not instructive.

The ALJ's determination was supported by substantial evidence and free of legal error. Dr. Weiss' opinion, although that of a treating physician, was internally inconsistent and was not supported by the objective findings.

B.  Plaintiff's Testimony

Next, Plaintiff contends that the ALJ failed to properly evaluate her testimony regarding her pain and side effects.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*,495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

14

1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. AR 21. Nonetheless, the ALJ accommodated Plaintiff's complaints, to the extent he deemed them supported, by limiting her to a reduced range of light work. AR 21.

He then went on to discuss the lack of objective evidence, which the Court has addressed above. AR 21-22. While the ALJ cannot reject a claimant's testimony solely on this basis, it is one of many valid considerations. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Plaintiff points to portions of the medical record that support her claim, i.e., while she initially recovered well from surgery, she eventually deteriorated to the point of needing multiple pain medications and frequent doctors visits. Again, these are inherently subjective tests and the ALJ is entitled to resolve the resulting conflicts. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Later in his decision, he explained that Plaintiff's testimony did not support her allegations. For example, Plaintiff testified that the pain medication took some of the pain away.

1  Specifically, she said that once she takes her medication, she's okay but still has a hard time. AR
2  369. The ALJ interpreted this as meaning that Plaintiff was functional, but not pain free. Not
3  surprisingly, Plaintiff disagrees with this interpretation, contending that even though some of her
4  pain is relieved, the medication causes side effects that further debilitate her. Although Plaintiff
5  testified to side effects and Dr. Weiss listed them in her functional capacity assessment, there is
6  virtually no mention of side effects in the medical records. In fact, if anything, the record
7  demonstrates that Plaintiff has repeatedly asked for *more* medication without mentioning side
8  effects. She asked for a refill Robaxin even though she had just informed the doctor that it
9  wasn't working. AR 285. She also requested Methadone and Prozac, which were prescribed
10 almost without hesitation. AR 258, 262 When she asked for a renewal of her Vicodin a week
11 before her prescription ran out, Nurse Walters denied the request but Dr. Weiss subsequently
12 renewed her prescription, again without question. AR 229, 231. If Plaintiff was having such
13 severe side affects as she now alleges, it certainly wasn't reflected in the medical evidence.

14      The ALJ also noted that Plaintiff performs household chores and cares for three minor
15 children. AR 23. Although Plaintiff testified that she was unable to lift her baby, she was home
16 all day with the child and was totally responsible for the child. AR 23. *Sample v. Schweiker*, 694
17 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the
18 evidence). Plaintiff again points to evidence that she contends supports her allegations, but the
19 existence of such evidence does not undermine the ALJ's findings. The role of this Court is not
20 to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the
21 decision is supported by substantial evidence and free of legal error.

22      Based on the above, the ALJ set forth sufficiently specific reasons to permit the Court to
23 conclude that he did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d
24 947, 958 (9th Cir. 2002). Plaintiff's claim is without merit and must be denied.

25                              **CONCLUSION**

26      Based on the foregoing, the Court finds that the ALJ's decision is supported by
27 substantial evidence in the record as a whole and is based on proper legal standards.
28 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Tracy L. Gallardo.

IT IS SO ORDERED.

Dated:   **September 8, 2008**                               **/s/ Dennis L. Beck**
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE